## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| | : | |
| **v.** | : | **Case No. 25-MJ-111 (MAU)** |
| | : | |
| **CURTIS LEAR** | : | |
| | : | |
| **Defendant.** | : | |

### THE UNITED STATES' MEMORANDUM IN SUPPORT OF PRETRIAL DETENTION

      The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this memorandum in support of its oral motion that Defendant Curtis Lear ("LEAR") be detained pending trial pursuant to 18 U.S.C. § 3142(f)(1)(E). The United States requests that the following points and authorities, as well as any other facts, arguments and authorities presented at the detention hearing, be considered in the Court's determination regarding pre-trial detention.

### PROCEDURAL HISTORY AND RELEVANT FACTS

      On June 21, 2025, at approximately 8:45 p.m., a black Jeep Patriot with D.C. license plate alphanumeric number JF7064 (the "Suspect Vehicle") drove onto the National Mall in the area of 7th Street, SW, between Jefferson and Madison Drives in Washington, D.C. There, the Suspect Vehicle drove erratically in circles at a high rate of speed. The incident was largely captured by CCTV and private cell phone cameras. Video footage shows the Suspect Vehicle repeatedly driving recklessly and in close proximity to pedestrians.

**Figures 1 to 6**
*Figures 1 to 6, which are sequentially depicted below, are still photographs of the Subject
Vehicle on the National Mall. The Subject Vehicle is circled in red in Figures 1 to 3.
The Subject Vehicle's license plate is visible in Figure 6.*













At the time, V-1 was on the National Mall. V-1 reported that the Suspect Vehicle headed in ITS direction, intending to hit V-1 and ITS spouse, causing them to run away for fear of being hurt. In video footage captured by V-1, V-1 can be heard saying, "that person is going to kill someone."

During the incident, there was a large presence of pedestrians on or around the National Mall. A well-attended event, the "33rd Annual Giant Barbecue Battle" was taking place along the Mall, which also created an influx of visitors. One officer estimated that several hundred visitors were present in the area at the time. Another officer observed that multiple pedestrians were forced to move quickly to avoid being struck by the Suspect Vehicle.

U.S. Capitol Police Officer Jonathan Haber approached the Suspect Vehicle on foot. The driver rolled down the driver's side window and stated, "It's just a joke." Officer Haber was unable to get a good view of the driver but determined that the driver was a black male. Other officers on scene described the driver as a black male, approximately six feet tall, medium to large in stature, with black hair styled in dreads, wearing a black sleeveless muscle shirt and basketball shorts.

U.S. Capitol Police Officer Jared Negron also observed part of the incident. Officer Negron saw the driver standing outside of the vehicle yelling at pedestrians while flexing his arms. Officers later attempted a traffic stop, but the Suspect Vehicle fled.

**Figure 7**
*Figure 7 shows the Suspect Vehicle, circled in red, fleeing and leaving a cloud of dust in its path.*



Officers canvassed the area and were initially unable to locate the Suspect Vehicle. Officers queried the Suspect Vehicle's license plate number in a law enforcement database and learned that it was registered to LEAR at Address-1.

On June 23, 2025, at approximately 2:57 a.m., officers located the Suspect Vehicle driving near Address-1. Officers conducted a traffic stop. LEAR was driving the Suspect Vehicle. LEAR also matched the description of the driver provided by officers on scene. LEAR waived his Miranda rights and provided a statement. LEAR admitted he owned the Suspect Vehicle since 2023. He also admitted he had not loaned the vehicle to anyone. When asked if he drove on any grass areas, LEAR

responded, "Maybe. I hit the curb a few times." An officer then asked LEAR if he drove within a park area. At that point, LEAR terminated the interview.

On June 22, 2025, separate photo array procedures were conducted with Officer Negron and U.S. Capital Police Officer Brian Ayala. Both officers positively identified LEAR as the driver of the Suspect Vehicle.

As shown below, LEAR's vehicle caused substantial damage to the grass on the National Mall. On June 25, 2025, the National Park Service obtained a quote from a landscaping contractor to repair the grass. The quoted total cost of repair was $9,165.

**Figures 8 to 11**
*Figures 8 to 11, which are sequentially depicted below, are still photographs
of the tire marks Subject Vehicle left on the National Mall.*





LEAR was placed under arrest. A criminal history query revealed that the Defendant has two prior contacts from 2015, which are referenced on Page 4 of the Pretrial Services Report. On June 25, 2025, LEAR was charged by criminal complaint and, on June 26, 2025, initially appeared before the Court. A detention hearing is scheduled for June 30, 2025, at 12:00 p.m.

<strong><u>ARGUMENT</u></strong>

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). When determining whether any condition or combinations of conditions will assure the appearance of a defendant and the safety of the community, in light of any applicable presumptions, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by release. *See* 18 U.S.C. § 3142(g).

In making the pretrial detention determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210

7

(D.C. Cir. 1996).  Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986); *see also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992).  A pretrial detention hearing should not be used as a discovery device. *See Smith*, 79 F.3d at 1210; *Williams*, 798 F. Supp. at 36.

### Bail Reform Act Factors Favor Detention Given the Danger to the Community and Concerns Regarding LEAR's Return to Court

The United States seeks pretrial detention pursuant to 18 U.S.C. 3142(f)(1)(E) because LEAR is charged with felonies, namely, Destruction of Government Property, 18 U.S.C. § 1361 and Assault with a Dangerous Weapon,  22 D.C. Code § 402, and the crimes involved the use of a dangerous weapon, a vehicle.  *See United States v. Chansley*, 525 F. Supp. 3d 151, 162 (D.D.C. 2021) (explaining that dangerous weapon is not defined in 3142 and concluding it is "an object that is either inherently dangerous or is used in a way that is likely to endanger life or inflict great bodily harm").

Here, the Defendant drove his vehicle erratically and at a high rate of speed in an area restricted to pedestrians.  Multiple pedestrians fled to avoid being struck by the Defendant's vehicle. The conduct endangered the lives and safety of hundreds of pedestrians in the area of the National Mall.  Moreover, the Defendant demonstrated his disregard of the law by refusing to stop when commanded to do so by police and by fleeing and making good his escape

The facts and circumstances in this case demonstrate that there are no conditions or combination of conditions that would assure the safety of the community or the Defendant's return to Court should he be released.  See 18 U.S.C. § 3142(e)(1).  All four Section 3142(g) factors favor detention pending trial, including: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature

and seriousness of the danger to any person or the community that would be posed by his release. See 18 U.S.C. § 3142(g).

**A.    The Nature and Circumstances of the Offenses Weigh in Favor of Detention**

The nature and circumstances of the charged offenses weigh in favor of pretrial detention. The National Mall is a special park for the District of Columbia and the United States. Per the National Park Service website, it "is where the nation comes to remember and where history is made. As 'America's Front Yard,' the National Mall and Memorial Parks is home to many of our country's most iconic memorials telling the story of people and events that shaped us as a nation. Each year, millions of people come to recreate, commemorate presidential legacies, honor our veterans, and make their voices heard."[1]

This incident happened in the summer, a week before our Nation's birthday, and thus during a time when the District of Columbia is even more heavily visited than other times of the year. Despite this, the Defendant engaged in extremely dangerous behavior. For the Defendant, the National Mall was a good location for what he referred to as a "joke." The Defendant's behavior was outrageous and without any justification. His conduct endangered lives and caused damage to federal land at the needless expense of the taxpayer. Moreover, following the incident, the Defendant fled from police and made good his escape. The United States submits that this also shows that the Defendant is a flight risk.

**B.    The Weight of the Evidence Against the Defendant Favors Pretrial Detention**

---

[1] "Icons in the Nation's Capital," National Park Service, available at: https://www.nps.gov/nama/index.htm (accessed on June 28, 2025).

The evidence of both LEAR's guilt and his dangerousness to the community are incredibly strong and weigh heavily in favor of pretrial detention. As this court has noted, "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *See United States v. Blackson*, 2023 WL 1778194, at \*10 (D.D.C. Feb. 6, 2023), *aff'd,* 2023 WL 2663034 (D.C. Cir. Mar. 28, 2023).

Because that is true here, the strength of the evidence against the Defendant also favors detention. LEAR's conduct is captured on CCTV and private video footage from several angles and corroborated by eyewitness accounts. Further, two officers identified LEAR as the perpetrator in photo array procedures and law enforcement queries confirmed that LEAR is the registered owner of the Suspect Vehicle. LEAR himself also admitted that no one else had borrowed LEAR's car.

## C.    Defendant's History and Characteristics Weigh in Favor of Detention

LEAR's history and characteristics also weigh in favor of detention. A criminal history query revealed that the Defendant has two prior contacts from 2015, which are referenced on Page 4 of the Pretrial Services Report.

Although these acts did not result in criminal convictions, at a minimum, they have put LEAR on notice that he would face consequences should he not comport his behavior with the law. Despite this, LEAR is accused of committing an extremely dangerous and outrageous act that flies in the face of the public's safety. And the evidence the United States possesses against LEAR, as described above, is very strong.

## D.    The Danger to the Community Created by the Defendant's Release Weighs in Favor of Detention

The D.C. Circuit has noted that "'[w]hen the Government proves by clear and convincing evidence that an arrestee presents an identified and articulable threat to an individual or the community,'" pretrial detention is available to "'disable the arrestee from executing that threat.'" *United States v. Munchel*, 991 F.3d 1273, 1280 (D.C. Cir. 2021) (quoting *United States v. Salerno*, 481 U.S. 739, 755 (1987)).  This requires the Court to make a "forward looking determination" about the Defendant's risk of danger to the community, keeping in mind that detention may be justified even if the Court does not explicitly find that Defendant is a risk of committing acts of violence. *United States v. Hale-Cusanelli*, 3 F.4th 449, 456 (D.C. Cir. 2021) (citing *Munchel*, 991 F.3d at 1283).

The Defendant poses a clear and articulable threat to the community.  He has demonstrated a complete disregard for the safety of members of this community.  No condition or combination of conditions can deter a person who wantonly disregards lawful orders and flees from police all in pursuit of what the Defendant deemed a "joke."  The Defendant's conduct caused thousands of dollars of damage and endangered the lives of everyone who was out on the National Mall that evening.  No matter what condition the Court sets, the Defendant has made clear he will not abide by lawful orders.

## CONCLUSION

LEAR is eligible for pretrial detention pursuant to 18 U.S.C. § 3142(f)(1)(E).  All four of the Bail Reform Act factors weigh heavily in favor of pretrial detention, and LEAR poses a substantial risk of dangerousness to the community and flight if he is released pending trial in this case.

WHEREFORE, the United States respectfully requests that the Court issue an Order granting the United States' motion that the Defendant be held without bond pending trial.

Respectfully submitted,

JEANINE F. PIRRO
United States Attorney

11

NY Bar No. 1387455

By:    */s/ Jacob M. Green*
Jacob M. Green
MA Bar Number 706143
Michael C. Lee
CT Bar Number 436272
Assistant United States Attorneys
United States Attorney's Office
601 D Street, N.W.
Washington, D.C. 20530
Telephone: (202) 803-1617
Email: Jacob.green3@usdoj.gov